IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JENNIFER L. ROUSE,** : | |
| : | Case No. 2:16-cv-223 |
| **Plaintiff,** : | |
| : | **JUDGE ALGENON L. MARBLEY** |
| v. : | |
| : | **Magistrate Judge Kemp** |
| **COMMISSIONER OF SOCIAL** : | |
| **SECURITY,** : | |
| : | |
| **Defendant.** : | |

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff Jennifer L. Rouse's ("Rouse") Objection to Magistrate Judge Kemp's January 17, 2017 **Report and Recommendation** (Doc. 17), which recommends that this Court overrule Rouse's Statement of Specific Errors (Doc. 10) and affirm the Commissioner of Social Security's decision. Upon independent review by this Court, and for the reasons detailed below, Rouse's Objection is hereby **OVERRULED**. This Court **ACCEPTS** and **AFFIRMS** Magistrate Judge Kemp's **Report and Recommendation**.

### I. BACKGROUND

Rouse filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on April 4, 2012. After these applications were initially denied, Rouse was granted a hearing before an Administrative Law Judge ("ALJ") on May 14, 2014. At the hearing, Rouse moved to withdraw her DIB claim. The ALJ subsequently issued a decision on September 26, 2014 denying benefits.

## A. The ALJ's Decision

In his opinion denying benefits, the ALJ followed the required five-step sequential analysis for a disability benefits claim. *See* 20 C.F.R. § 416.920(a)(4). At step one, the ALJ determined that Rouse had not engaged in substantial gainful activity since her alleged onset date. (Doc 9-2 at 10).

At step two, the ALJ concluded that Rouse had severe impairments including: degenerative disc disease at L4-S1 with spondylotic spondylolisthesis and left radiculopathy; status post laminectomy and fusion; sciatica; cervical/thoracic/lumbar sprain; intermittent cephalgia/migraine headaches/low pressure headaches; mood disorder; bipolar disorder; diagnosis of major depressive disorder; post-traumatic stress disorder; and diagnosis of a personality disorder. (*Id.*). Other than these impairments listed as "severe," the ALJ determined that:

> all other impairments . . . are non-severe or not medically determinable as they have been responsive to treatment, cause no more than minimally vocationally relevant limitations, have not lasted or are not expected to last at a 'severe' level for a continuous period of 12 months or expected to result in death, or have not been properly diagnosed by an acceptable medical source . . . . (*Id.* at 11).

At step three, the ALJ determined that none of the severe impairments, at any time, met or equaled the requirements of any section of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

At step four, the ALJ determined that Rouse had no past relevant work. (*Id.* at 21).

Finally, at step five, the ALJ found that Rouse could work at the sedentary exertional level with a sit-stand option permitting her to change positions every thirty minutes without breaking task. (*Id.* at 14). Rouse could only do minimal squatting; she could not do any climbing. (*Id.*). Rouse further could not be exposed to extreme temperatures or wet or humid conditions,

nor could she be exposed to workplace hazards and high-stress environments. (*Id.*). She also could not work at a production or assembly line pace or have independent decision-making responsibilities. (*Id.*). The ALJ determined that Rouse could do unskilled work involving only routine and repetitive instructions, and that she should have no interaction with the general public and no more than occasional interaction with co-workers and supervisors. (*Id.*).

Because of these restrictions, the ALJ concluded Rouse could work as a document preparer, ampule sealer, or surveillance system monitor and that these jobs existed in sufficient numbers in the national economy. (*Id.* at 22). Accordingly, the ALJ held that Rouse was not entitled to benefits. (*Id.* at 22–23).

The ALJ's conclusion became the Commissioner's final decision on January 14, 2016, when the Appeals Council denied review of the ALJ's decision. Rouse then filed her Statement of Specific Errors in this Court on June 24, 2016. (Doc. 10).

### B. Rouse's Statement of Specific Errors

Rouse raised two issues in her Statement of Specific Errors. First, Rouse asserted that the ALJ's formulation of mental residuary functional capacity ("MRFC") was not supported by substantial evidence because it did not include a reference to Rouse's concentration, attention, persistence, or pace abilities. Specifically, Rouse focused on the ALJ's written decision, which allegedly gave no weight to the examination and assessment of Mr. Bousquet, a consultative examiner who had previously examined Rouse. (*Id.* at 5–6). Without considering Mr. Bousquet's assessment, Rouse claimed that the ALJ's formulation of her MRFC was not an adequate representation of her mental health complications. (*Id.*).

Second, Rouse asserted that the ALJ's decision should be reversed because his findings at step two were impermissibly vague, thus leaving his subsequent residual functional capacity

3

("RFC") determination unsupported by substantial evidence. (*Id.* at 10). Because the ALJ did not specify which impairments—other than the impairments deemed "severe"—were non-severe versus not medically determinable, Rouse claimed it was unclear if the RFC accounted for the potentially determinable, albeit non-severe impairments which are required to be considered simultaneously with the severe impairments. (*Id.* at 10–11).

### C. Magistrate Judge Kemp's Report and Recommendation

On January 17, 2017, Magistrate Judge Kemp issued his Report and Recommendation overruling both of Rouse's specific errors. (Doc. 17). Regarding Rouse's first claim of error, Judge Kemp determined that the ALJ relied upon the state reviewing psychologists' opinions to determine Rouse's MRFC (*Id.* at 11–12). These opinions gave great weight to Mr. Bousquet's assessments of Rouse's functionality limitations, and therefore incorporated parts of his findings into their own. (*Id.*). Since the ALJ ultimately relied on the state psychologists' opinions to determine Rouse's MRFC, any defect in the ALJ's decision was effectively cured. (*Id.*).

Additionally, because the ALJ discounted the credibility of Rouse's testimony, he was similarly entitled to discount partially Mr. Bousquet's assessment that was to some extent based on Rouse's self-reported symptoms. (*Id.* at 12). Finally, the ALJ was permitted to give Mr. Bousquet's opinion less deference because he was not a treating source. (*Id.*). Considering these factors, Judge Kemp determined that the ALJ did not commit reversible error by giving more weight to the state agency psychologists' assessment of Rouse's MRFC than Mr. Bousquet's assessment. (*Id*).

Considering Rouse's second asserted error, Judge Kemp determined that the ALJ's failure to clarify which remaining impairments were non-severe versus not medically determinable was harmless. (*Id.* at 10). Despite it being "better practice [for an] ALJ to say

4

explicitly which impairments are found to be non-severe and which are found not to be medically determinable," Rouse was nevertheless unable to show how any of the impairments the ALJ did not list as severe negatively affected her functioning or ability to complete the work listed in her RFC. (*Id.* at 9–10). Without such a showing, Judge Kemp determined that a remand for clarification would not change Rouse's RFC, and would therefore be futile. (*Id.* at 10). Rouse timely objected to the Magistrate Judge's Report and Recommendation.

## II. STANDARD OF REVIEW

Upon objection to a magistrate judge's report and recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see* Fed. R Civ. P. 72(b). This de novo review requires the Court to "determine whether the record as a whole contains substantial evidence to support the ALJ's decision" and to "determine whether the ALJ applied the correct legal criteria." *Inman v. Astrue*, 920 F. Supp. 2d 861, 863 (S.D. Ohio 2013). Substantial evidence means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quotations omitted). Substantial evidence constitutes "more than a mere scintilla, but only so much as would be required to prevent judgment as a matter of law against the Commissioner if this case were being tried to a jury." *Inman*, 920 F. Supp. 2d at 863 (citing *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1999)).

## III. ANALYSIS

Rouse objected to the Magistrate Judge's Report and Recommendation on two grounds. First, Rouse claimed that the ALJ's determination at step two was impermissibly vague and not harmless error. (Doc 18 at 2). Because it was unclear which impairments were listed as non-

5

severe, Rouse argues that a proper hypothetical could not be posed to a vocational expert for his or her opinion on her occupational ability. (*Id.* at 3). Thus, Rouse asserts that a remand is necessary for proper findings at step two and to "obtain vocational testimony with the entirety of the impairments, both severe and non-severe[.]" (*Id.*).

Rouse's second objection is that, as a result of rejecting Mr. Bousquet's opinion, the ALJ's MRFC determination was not based on substantial evidence insofar as it did not reasonably account for her limitations in maintaining persistence and pace. (*Id.* at 3–4). The Court will consider Rouse's two objections to Judge Kemp's Report and Recommendation in turn.

### A. The ALJ's Error at Step Two was Harmless.

Rouse objected to the Magistrate Judge's finding that the ALJ's classification of her impairments at step two was harmless. While the ALJ *did* incorrectly conflate non-severe impairments with impairments that are not medically determinable, because that error was harmless, Rouse's first objection is **OVERRULED**.

At every stage of the proceeding, the Court must disregard all errors and defects that do not affect a party's substantial rights. *See* Fed. R. Civ. P. 61. The burden of showing that an error is harmful typically falls upon the party disputing an agency determination. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Because step two in the sequential review process is only a threshold requirement to move on to subsequent steps in the analysis, when the ALJ determines there are at least some severe impairments, "[t]he fact that some of [the claimant's other] impairments [are] not deemed to be severe at step two is . . . legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). It is a plaintiff's burden to prove the severity of his or her impairment, and that the impairment is in fact medically determinable. *See Watters v.*

6

*Comm'r Soc. Sec.*, 530 F. App'x 419, 421 (6th Cir. 2013); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Further, an ALJ's decision not to find any limitations arising from the condition in question is valid if supported by substantial evidence. *See Rose v. Comm'r of Soc. Sec.*, No. 2:14-cv-1901, 2015 WL 6735313, *5 (S.D. Ohio Nov. 4, 2015), *aff'd* 2015 WL 7779300 (S.D. Ohio Dec. 2, 2015).

The Court agrees with Judge Kemp that Rouse has failed to identify which impairments at issue have affected her functioning or limited her ability to work, nor is it apparent from the record. (Doc. 17, at 10). Rouse has therefore failed to show harm or prejudice from the ALJ's conflation of non-severe impairments with non-medically-determinable impairments. *See Shinseki*, 556 U.S. at 409. Rouse cannot claim a remand is necessary to develop testimony that she had the burden of producing at the initial hearing before the ALJ. *Watters*, 530 F. App'x at 421. Absent evidence or testimony showing how the failure to clarify which impairments were non-severe versus not medically determinable was prejudicial, substantial evidence supports the ALJ's determination that these conditions did not impair Rouse as they relate to her functional or working capacity. *See Rose*, 2015 WL 6735313, at *5; *Ealy*, 594 F.3d at 512. The ALJ's error was therefore harmless, and Rouse's first objection is **OVERRULED**.

### B. The ALJ's MRFC Determination was Supported by Substantial Evidence.

Rouse next objected to Judge Kemp's finding that the ALJ's MRFC determination was supported by substantial evidence. She maintains that by rejecting Mr. Bousquet's assessment, the ALJ failed to consider adequately her persistence and pace limitations. This objection is **OVERRULED**.

Mr. Bousquet is a non-treating consultative source. A non-treating consultative source who has physically examined a patient is typically afforded less deference than a treating

physician, but more deference than a non-examining source. *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). Rouse's argument here is similar to the objection in *Norris*, where the plaintiff claimed that the ALJ erred by assigning more weight to state agency source opinions versus that of an examining source. *See id.*

As explained by the Sixth Circuit, however, "it is not a per se error of law . . . for the ALJ to credit a non-examining source over a nontreating source." *Id.* Any examiner's opinion "may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." *Id.* The ALJ need only explain his or her reasons for rejecting a treating source, as such opinion is granted controlling weight. *Id.* (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). If such a determination "adequately explains and justifies its determination as a whole" it will survive review. *Norris*, 461 F. App'x at 440.

The ALJ was thus free to discount Mr. Bousquet's assessment and adopt the reviewing state psychologists' opinions that he determined were more consistent with the record. *Id.* at 439. In doing so, the ALJ properly justified his decision to discount Mr. Bousquet's opinion on the following bases: it heavily relied on Rouse's own self-reporting of symptoms; there was a lack of corroboration in treatment notes; the fact that Rouse was not taking medication at the time of evaluation; and, the vague nature of Mr. Bousquet's opinion in general. (Doc. 9-2, at 18–19). Such reasoning "adequately explains and justifies" the ALJ's determination to reject Mr. Bousquet's assessment. *Norris*, 461 F. App'x at 440.

Moreover, as Judge Kemp correctly stated, the state agency reviewing psychologists—whose assessments were ultimately used by the ALJ—gave Mr. Bousquet's report great weight and noted that it supported various limitations on Rouse's ability to work. (Doc. 17 at 12).

8

Therefore, Mr. Bousquet's assessment *was* represented, albeit indirectly, in the ALJ's MRFC determination. To the extent the state reviewing psychologists incorporated Mr. Bousquet's assessment into their own, any potential issues resulting from the ALJ's rejection of Mr. Bousquet's report were cured.

Accordingly, Rouse's claim that the ALJ failed to account for her persistence and pace limitations is unsupported. The reviewing psychologists' assessments incorporated Mr. Bousquet's assessment, and the ALJ adopted all of the restrictions contained in the reviewing psychologists' opinions. These opinions *did* acknowledge that Rouse had moderate limitations in pace and persistence, but simply concluded she was nevertheless able to complete job tasks at a slower paces in a static environment. (Tr. 58, 61–63). The ALJ's MRFC determination therefore adequately considered Rouse's persistence and pace limitations. Rouse's second objection is **OVERRULED**.

## IV. CONCLUSION

For the foregoing reasons, the Court **ACCEPTS** and **AFFIRMS** Magistrate Judge Kemp's **Report and Recommendation** (Doc. 17), thereby **OVERRULING** Rouse's objections (Doc. 18). The Commission's denial of benefits is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: March 24, 2017

      s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**